IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCRIPPS MEDIA, INC., | : | |
| | : | Case No. 3:23-cv-1846 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LORENZO MACINTOSH, | : | COMPLAINT |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |
| | : | |

Plaintiff Scripps Media, Inc. ("Scripps"), by and through its undersigned counsel, complains against Defendant Lorenzo Macintosh ("Macintosh" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for damages and injunctive relief arising from Macintosh's copying of Scripps's May 2023 video news report in violation of the Copyright Act of 1976 ("Copyright Act"), 17 U.S.C. §§ 501, *et seq.*

2. Scripps operates the KMGH-TV station ("Denver7") in Denver, Colorado as part of its portfolio of 61 television stations in 41 markets. Denver7 was founded in 1953 and acquired by Scripps in 2011. Scripps is a wholly owned subsidiary of The E.W. Scripps Company.

3. Denver7 devotes significant resources in reporting and broadcasting the news. Denver7's journalism is supported by advertising dollars in connection with both television viewers and those people who watch and read its reporting online.

4. Macintosh made two posts to his Twitter account attaching an altered copy of the video. In the altered version of the report, the anchors, reporter, and interview subjects seem to make extremely offensive racist and anti-Semitic statements.

5. After Scripps notified Twitter of Macintosh's acts of infringement, Macintosh filed a counter-notification claiming the video he posted was a fair use. The video offers no commentary on the original report and uses far more of the original than necessary for any fair use purpose.

6. Scripps brings this action seeking to put an immediate stop to, and to obtain redress for, Defendant's willful and purposeful infringement of Scripps's news report.

## JURISDICTION AND VENUE

7. This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq*.

8. This Court has subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright).

9. This Court has personal jurisdiction over Defendant because he resides in this District. In addition, Defendant consented to the jurisdiction of this Court in the counter-notification he submitted under the Digital Millennium Copyright Act, 17 U.S.C. § 512(g)(3). Specifically, in that counter-notification, as required, Defendant provided an address in this District and consented to jurisdiction of the Federal District Court for the judicial district in which that address is located.

10. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), as Defendant is a natural person who is domiciled in this District. Venue also is proper under 28 U.S.C. § 1400(a) because Defendant may be found in this District.

## PARTIES

11. Plaintiff Scripps Media, Inc. is a Delaware corporation with its principal place of business in Ohio. Scripps is a wholly owned subsidiary of The E.W. Scripps Company.

12. Defendant Lorenzo Macintosh is an individual who, upon information and belief, resides at 933 East Bancroft Street, Toledo, Ohio 43608. Macintosh operates the Twitter account @OldMemeClown.

## FACTS

**A. The Scripps News Report**

13. On or about May 9, 2023, Denver7 broadcast a news report regarding Jeramiah Ganzy, a 14-year-old who claimed he was the victim of racist actions and lynching threats from other students at Castle Rock Middle School (the "News Report").[1]

14. The News Report, which is two minutes and forty-six seconds long, begins with Denver7 anchors Anne Trujillo and Shannon Ogden introducing the report, explaining that Ganzy said he experienced so much racism that he "no longer feels safe at school" and that his parents were intending to sue.

15. Denver7 reporter Jessica Porter then sat down with Ganzy to discuss his experience at the school. Ganzy, an African American student, said the racism was so egregious that he was finishing the semester online. Among other things, he said, classmates called him racist epithets.

---

[1] The News Report is published at Jessica Porter, *14-year-old says he no longer feels safe after alleged racism at Castle Rock Middle School*, Denver7 (May 9, 2023) https://www.denver7.com/news/front-range/castle-rock/14-year-old-says-he-no-longer-feels-safe-after-alleged-racism-at-castle-rock-middle-school.

Porter explained that Ganzy further contended that teachers turned a blind eye to the harassment and a staff member accused him of stealing a water bottle.

16. After Ganzy informed school administrators of a group, created by his classmates on the social media app Snapchat, where students made racist, anti-Semitic, and anti-LGBTQ+ statements, Gazny told Denver7 that things got worse.

17. Lacey Ganzy, Jeramiah's mother, went on to discuss her decision to remove Jeramiah from the school after students threatened Jeramiah, saying he should be "lynched" for reporting the Snapchat group to school administration. The mother said that the school should have classified the statements made to her son as hate speech instead of brushing it off as bullying and that her family intended to file a lawsuit.

18. Denver7 then interviewed local attorney Iris Halpern who said Ganzy had suffered a higher level of harm than simple bullying because he was subject to racism and discrimination at school. She said schools have a legal and moral obligation to intervene and educate the community.

19. The News Report ends with a statement from Douglas County School District, read by Ogden, thanking the Ganzy family for voicing their concerns so that they could address their needs.

**B. Defendant's Infringing Activity**

20. On May 17, 2023, Macintosh posted altered copies of the News Report on his Twitter account @OldMemeClown in two separate Tweets (the "Infringing Video"). The two Tweets were formerly available online at https://twitter.com/OldMemeClown/status/1658830796902334469 and https://twitter.com/OldMemeClown/status/1658830988921696260.

21. Each video Macintosh posted was a "deepfake," a version of the News Report which had been manipulated to make it appear that the anchors, reporter, and interview subjects were saying things that they had not actually said. Specifically, the original News Report has been altered so that it appears that the participants in the News Report were making repeated racist and anti-Semitic statements.

22. For example, at the beginning to the altered video, Trujillo's voice is manipulated to make her appear to say that "something fairly f***ing mundane happened to a [N word] at Castle Rock School so we need hate crime charges against white people." The altered Ogden audio appears to respond to say "the ADL has determined that we need to cover this as a hate crime and make it seem like a white conspiracy against [N words] and [a racist term for people of non-European descent], and God knows we're not allowed to not talk about f***ing Jews in any victim story since World War II." Similar statements, falsely attributed to Porter, Ganzy, his mother, and Halpern appear throughout the video.

23. The altered video makes use of the original News Report in its entirety. It is altered only by the use of deepfake audio and switching out some of the on-screen graphics.

24. Macintosh facetiously captioned the videos by saying "Woah what's going on at ABC7 Denver?!"

25. Screenshots of Macintosh's original tweets are attached hereto as Exhibit A.

**C. Scripps Submits a DMCA Takedown Notice and Macintosh Responds**

26. Scripps originally submitted a DMCA takedown notice to Twitter on May 26, 2023. After Twitter asked Scripps to resubmit the information in a specific format, Scripps did so. On May 31, 2023, Twitter removed the content from its site.

27. That day, the Scripps attorney who had submitted the DMCA takedown notice received an email from Macintosh. Macintosh identified himself at that time as the "Senior Counsel of Memes" for "Old Meme Media LLC" and said he "represent[ed] the Twitter user known as Tired Meme Clown." Notably, Macintosh did not concede at that time that he was in fact the Twitter user named "Tired Meme Clown" or the person behind the @OldMemeClown Twitter handle.

28. On September 8, 2023, Macintosh posted on @OldMemeClown that his main account "ha[d] been suspended for repeated copyright violations." The next day, he posted an "UPDATE," saying that he had "filed a slew of counter-notices to the DMCA claims on my main account, all of which cite the Fair Use exception to the DMCA."

29. On September 9, 2023, Scripps received an email from Twitter stating it received a DMCA counter-notice from Macintosh. Twitter further stated "[a]s a result, we'll cease disabling access to the materials within 10 business days, unless we received notice that you've filed an action seeking a court order to restrain [Defendant] from engaging in this infringing activity."

30. In the counter-notice, Macintosh stated that the material was "protected by the Fair Use exception of the DMCA. The material was used in a transformative nature."

## COUNT ONE
## (COPYRIGHT INFRINGEMENT)

31. Scripps incorporates and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

32. Scripps's News Report is an audio visual work consisting of copyrightable subject matter under 17 U.S.C. § 102(a) and is protected under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

33. Scripps is the owner of the copyrights in the News Report.

34. Scripps has obtained a Certificate of Registration (PA 2-431-998) from the U.S. Register of Copyrights and has at all times complied with the Copyright Act and all other laws of the United States regarding the News Report.

35. Defendant has infringed Scripps's exclusive rights in the News Report under 17 U.S.C. § 106 by unlawfully reproducing, distributing, and publicly displaying the News Report without authority or permission from Scripps.

36. Defendant's use of the News Report was not a fair use.  Defendant was not commenting on the News Report, used more of the News Report than was necessary, and otherwise it was not fair use as a matter of law.

37. Defendant's infringement was willful, knowing, and in reckless disregard of Scripps's rights.

38. Defendant's violations have caused, and, unless restrained by this Court, will continue to cause, irreparable injury to Scripps not fully compensable in monetary damages.

39. As a direct result of Defendant's infringing conduct, Scripps has sustained and will continue to sustain substantial injury, loss, and damages.

40. Scripps is entitled to recover actual damages, including lost licensing fees, all gains, profits, and advantages received or otherwise achieved, directly or indirectly, by Defendant in connection with its illegal reproduction and distribution of the News Report under 17 U.S.C. § 504(b) or, if elected, statutory damages under 17 U.S.C. § 504(c) for Defendant's willful infringement.

41. Scripps is entitled to recover reasonable attorney's fees and costs under 17 U.S.C. § 505.

**PRAYER FOR RELIEF**

WHEREFORE, Scripps demands judgment in its favor and against Defendant as follows:

A. Finding that Defendant has directly and indirectly infringed Scripps's copyrights in the News Report;

B. Finding that Defendant's infringement of Scripps's copyrights was willful;

C. Finding that there is a substantial likelihood that Defendant will continue to infringe Scripps's copyrights unless enjoined from doing so;

D. Issuing a preliminary and permanent injunction ordering that Defendant, and each of his agents, servants, employees, and all other persons in privity or acting in concert with them, be enjoined and restrained from directly or indirectly infringing any of Scripps's copyrights;

E. Ordering Defendant to deliver to Scripps all infringing content;

F. Ordering Defendant to provide an accounting of all revenues and profits gained by him or any of his agents or affiliates while engaging in the acts complained of in this Complaint, and establishing a constructive trust for Scripps's benefit over all such profits;

G. Awarding Scripps all actual damages it has suffered and Defendant's profits, gains or advantages of any kind attributable to Defendant's infringement of Plaintiff's News Report and/or, upon its election, statutory damages, along with all enhanced or punitive damages that it may be entitled to recover;

H. Awarding Scripps prejudgment and post-judgment interest;

I. Awarding Scripps its costs, investigative expenses, and attorneys' fees; and

J. Awarding Scripps such other and/or further relief as is just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury for all claims and issues asserted in this Complaint that are so triable.

Respectfully submitted,

s/ Darren W. Ford
Darren W. Ford (0086449)
**FARUKI PLL**
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0312
Fax: (513) 632-0319
Email: dford@ficlaw.com

Thomas B. Sullivan (*pro hac* forthcoming)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6139
Facsimile: (212) 223-1942
sullivant@ballardspahr.com

*Attorneys for Plaintiff*